# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**ALI CHARAF DEMACHE,**

      **Plaintiff,**

**v.**                                **CIVIL ACTION NO. 3:23-CV-41**
                                        **(GROH)**

**MR. Y. HONG,**
**MS. SMITH, and**
**MR. WOLFE,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On February 13, 2023, the *pro se* Plaintiff, who is a federal prisoner incarcerated at Gilmer FCI, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), claiming his Constitutional rights were violated. ECF No. 1.[1] Plaintiff paid the initial partial filing fee on March 7, 2023. ECF No. 9.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed with prejudice.

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:23-CV-41, unless otherwise noted.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff's complaint asserts three claims for relief. First, Plaintiff alleges that Defendants Smith and Hong violated his First Amendment right to exercise his religion by banning him from attending Ramadan prayer. ECF No. 1 at 7. Second, Plaintiff appears to allege that Defendants Smith and Hong attempted to force Plaintiff to stop exercising his religion by banning him from attending Ramadan prayer. Id. at 8. Further, Plaintiff contends that he was banned from Ramada Prayer after he was absent for two days because of illness which was suspected to be COVID. Id. Third, Plaintiff contends[2] his banning from Ramadan prayer constituted "deliberate discrimination". Id. at 9. Further, in the space of the Court-approved form to provide information about defendants, Plaintiff alleged that he informed Warden Wolfe through the filing of a BP-9 form about both his ban from Ramada prayer and meals, and that such a ban was a violation of Plaintiff's constitutional rights. Id. at 3.

Plaintiff asserts the following injuries: (1) severe depression; (2) "dire consequences" on his wellbeing; (3) feelings of helplessness; (4) emotional suffering; (5) anxiety; and (6) distress. Id. In his request for relief, Plaintiff asks the court to award him: (1) $500,000.00; and (2) "for the institution of Gilmer to stop banning and preventing people to exercise their religion". Id.

## III. LEGAL STANDARD

### A.   Pro Se Litigants

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines

---

[2] This third "claim" was articulated in the space of the Court-approved form provided to describe injuries. ECF No. 1 at 9.

v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[3] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless." Id.

### B. Failure to State a Claim

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v.

---

[3] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, 404 U.S. at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must

4

be dismissed." Id. at 570. Thus, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

    **C.    Civil Rights Actions Under Bivens.**

In Bivens, supra, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents. In FDIC v. Meyer, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a Bivens claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." Id. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 71 (2001).

Pursuant to Bivens, an individual federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). The Supreme Court further explained in Malesko:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72. Further, in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988)

5

("section 1983 claims[4] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

In Bivens, the Supreme Court held that it had the authority, "under general principles of jurisdiction" to "create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." Egbert, 142 S.Ct. at 1802. After Bivens was decided, the Supreme Court twice, "fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, see *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, see *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)." Egbert, 142 S.Ct. at 1802.

However, the Supreme Court has cautioned that implied remedies have been found in limited circumstances[5], and the judiciary should not "assume[ ] common-law

---

[4] The Court notes that Bivens actions and § 1983 actions are both civil rights actions, and that Bivens actions regarding deprivation of civil rights have long been considered as the federal counterpart to state actions authorized by 42 U.S.C. § 1983. As discussed below, Egbert v. Boule, 142 S.Ct. 1793 (2022), explains the difference between the statutorily created remedy under § 1983, and the judicially created remedies established by Bivens and its progeny.

[5] The Supreme Court in Egbert, 142 S.Ct. at 1799 - 1800, noted that it has declined to imply a similar cause of action for alleged constitutional violations in the following instances: Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (race discrimination suit brought by enlisted naval men); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (aerospace engineer's First Amendment defamation and retaliation suit against director of federal space flight center); United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (military veteran who volunteered for chemical warfare testing program sued for being unknowingly being administered LSD which caused psychological and personality changes); Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (improper denial of Social Security benefits, allegedly as result of due process violations); FDIC v. Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (terminated employee's Fifth Amendment suit claiming deprivation of a property right without due process); Correctional Services Corp. v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (federal inmate with a heart condition who was assigned to a Community Correctional Center's fifth floor bedroom suffered a heart attack and fell, after

powers to create causes of action." Egbert v. Boule, 142 S.Ct. 1793, 1802 (2022) (quoting Malesko, 534 U.S. at 75). In Egbert, the Supreme Court held that, "[a]t bottom, creating a cause of action is a legislative endeavor. Courts engaged in that unenviable task must evaluate a 'range of policy considerations . . . at least as broad as the range . . . a legislature would consider.'" 142 S.Ct. at 1802, quoting Hernandez v. Mesa, 589 U.S. at —, 140 S.Ct. at 741 (2020).

Further, the Egbert court explained that to recognize new Bivens remedies, a court must make a two-step inquiry to determine if: (1) the case presents a new Bivens context which is meaningfully different from the three cases in which the Supreme Court has implied a damages action; and (2) if the claim does arise in such a new context, whether there are special factors which indicate that Congress is better equipped than the judiciary to weigh the costs and benefits of allowing a damages action. Significantly, the Supreme Court wrote that, [i]f there is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a *Bivens* remedy." 142 S.Ct. at 1803, quoting Hernández, 589 U. S., at ——, 140 S.Ct., at 743. The Supreme Court further explained:

---

defendant's employee required inmate to use the stairs instead of the elevator to reach his bedroom); Wilkie v. Robbins, 551 U.S. 537, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (commercial rancher's Racketeer Influences and Corrupt Organizations Act (RICO) and Bivens claims against Bureau of Land Management (BLM) for allegedly using extortion to force rancher to grant an easement to BLM was without merit); Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010) (survivors of immigration detainee sued after detainee persistently sought, but was denied medical treatment, and later died of metastatic cancer, based on immunity for U.S. Public Health Service employees); Minneci v. Pollard, 565 U.S. 118, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012) (federal inmate sued for denial of adequate medical care by employees at privately run federal prison, was without relief under Bivens because state tort law authorized adequate alternative damages actions); Ziglar v. Abbasi, 582 U. S. —, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017) (alien detained after September 11 terrorist attack filed suit alleging harsh and punitive pre-trial conditions in violation of Fifth Amendment); Hernández v. Mesa, 589 U. S. —, 140 S.Ct. 735, 206 L.Ed.2d 29 (2020) (parents of 15-year old Mexican child shot and killed by United States Border Patrol agent across US-Mexico border after child crossed into US territory and returned to Mexico, not entitled to relief under theory of Bivens liability for violations of Fourth or Fifth Amendments).

7

> Finally, our cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure. If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action. Importantly, the relevant question is not whether a *Bivens* action would disrupt a remedial scheme, or whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief. **Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.**

142 S. Ct. at 1803 – 04 (emphasis added) (cleaned up).

### D. Requests for Injunctive Relief

The Fourth Circuit reviews "a district court's decision to grant a preliminary injunction under an abuse-of-discretion standard." International Refugee Assistance Project v. Trump, 883 F.3d 233, 255 – 56 (4th Cir. 2018), as amended (Feb. 28, 2018). The standard for granting injunctive relief was articulated by the United States Supreme Court which held in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) that:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

As restated by the Fourth Circuit, when a plaintiff seeks the extraordinary remedy of a preliminary injunction:

> The plaintiff "need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial." A plaintiff seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest.

8

Int'l Refugee, 883 F.3d at 256 (citing WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009) (citing Winter, 555 U.S. at 7)). This standard becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo. See East Tennessee Natural Gas Co. v. Sage, 361 Fed 3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief").

### IV. ANALYSIS

A review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that regardless of whether Plaintiff's claims are properly considered under Bivens, Plaintiff fails to present a claim upon which relief can be granted.

#### A. Lack of Physical Injury

The Prison Litigation Reform Act (PLRA) of 1996, placed an important limitation upon all actions arising from incarceration, requiring proof of physical injury arising from the allegedly unconstitutional condition. Under 42 U.S.C. § 1997e(e), no recovery of monetary damages is allowed for emotional stress:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

See Munn Bey v. Department of Corrections, 839 F.Supp.2d 1 (D.D.C. 2011).

Here, Plaintiff seeks $500,000.00 in monetary damages for alleged violations of

9

his Constitutional rights. ECF No. 1 at 9. However, Plaintiff does not allege he suffered any physical ailment or injury. Rather, Plaintiff contends that he had severe depression, "dire consequences" on his wellbeing, feelings of helplessness, emotional suffering, anxiety and distress. Id. Accordingly, it is clear that Plaintiff does not claim that he suffered any physical injury as a result of the alleged denial. Even if Plaintiff had stated a claim upon which relief could be granted, he is ineligible to receive monetary damages unless he has demonstrated prior physical injury, which is not present here. Accordingly, Plaintiff is not entitled to monetary relief, and his claims against all Defendants, Hong, Smith and Wolfe, must be dismissed with prejudice.

### B. Improperly Named Defendant: Warden Wolfe

Further, in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'"). Moreover, "[i]n a *Bivens* suit, there is no *respondeat superior* liability. Instead, liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (2001) (internal citation omitted). In Trulock, although plaintiffs sued, among other defendants, the former director of the FBI and two FBI supervisors, the Court found that were there was "no allegation that any of these [ ] individuals were personally complicit. . . [and] [a]ccordingly, th[o]se defendants [ ] enjoy immunity." Id.

Plaintiff has named the warden of Gilmer FCI, Mr. Wolfe as a defendant herein. The

only allegation made by Plaintiff against Warden Wolfe is that he was "informed" when Plaintiff filed a BP-9 of the alleged violation of Plaintiff's constitutional rights. ECF No. 1 at 3. Under the clear holding of Trulock, there is no doctrine of *respondeat superior* in Bivens actions, and thus, supervisory defendants may not be held liable for the actions of their subordinates. Plaintiff does not allege that Warden Wolfe took any affirmative action to violate his constitutional rights, simply that he failed to take action to overrule decisions made by his subordinates.[6] Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against Defendant Wolfe, and he should be dismissed from this action with prejudice.

### C. Request for Injunctive Relief

To the extent that Plaintiff's request for relief seeks an order which requires "Gilmer to stop banning and preventing people [from] exercis[ing] their religion" [ECF No. 1 at 9], liberally construed it appears as though Plaintiff seeks extraordinary relief in the form of injunctive relief. Although Plaintiff alleges that his civil rights have been violated, he does not meet the four-part Winter test for issuance of a preliminary injunction. First, Plaintiff has not shown he is likely to succeed on the merits in regard to his Bivens claim. As discussed above, Plaintiff has not stated a claim upon which relief may be granted because he did not suffer a physical injury. Accordingly, Plaintiff has failed to provide any evidence to support his likelihood of success on the merits, which would meet the first prong of the Winter test in relation to his request for injunctive relief.

Second, Plaintiff has not demonstrated that he is likely to suffer irreparable harm in the absence of preliminary relief. Plaintiff asserts that he was prevented from attending

---

[6] The undersigned recognizes that Warden Wolfe signed the "Response to Institutional Administrative Remedy" from on July 1, 2022, which denied Plaintiff's BP-9. ECF No. 1-2 at 2.

11

group prayers and meals on Ramadan. He does not allege that he was prevented from privately practicing his religion. Rather, the administrative remedy documents submitted as exhibits by Plaintiff show that Plaintiff was only prevented from participating in group prayer. The denial of Plaintiff's BP-9 at the institutional level documents that:

> [P]rior to Ramadan fasting, Religious Services posted on TRULINCS any unauthorized absence made by participants during 30-day Ramadan prayer will be subject to removal from the list. [Plaintiff] had unauthorized absences on April 12, April 13, April 15, and April 17 [2022]; therefore, [Plaintiff was] removed from the Ramadan list.

ECF No. 1-2 at 2. Further, the denial of Plaintiff's BP-10 at the regional level documents that:

> A review of your complaint has been conducted. The review reveals chaplaincy removed you[ ] from the list for repeated absences. You had a total of four. Staff discussed your absences with you, in which you still repeatedly did not show up. This causes a disruption in the secure orderly running of Ramadan and institution. ***Removal from the list did not prohibit you from participating in prayer and study during this holy month.***

ECF No. 1-3 at 2 (emphasis added). In the denial of Plaintiff's BP-11 at the national level, the Administrator for National Inmate Appeals wrote:

> We have reviewed the documentation relevant to your appeal. Program Statement 5360.09[7], CN-l, Religious Beliefs and Practices states the Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, consistent with the security and orderly running of the institution and budgetary constraints. The Chaplaincy Services' staff has worked diligently to provide inmates participating in Ramadan the ability to adhere to the tenets of their faith and ensure they are upheld and facilitated to the maximum extent possible. Prior to the start of Ramadan, all participants were notified of the Ramadan schedule and conditions for participation. Non-compliance with such conditions may disrupt the secure,

---

[7] https://www.bop.gov/policy/progstat/5360_009.pdf.

> orderly running of Ramadan and the institution, including, but not limited to, inmate accountability, meal distribution, and staffing. Due to your non-compliance with the conditions for Ramadan participation, you were removed from the approved participant list. ***There is no indication you communicated your health concerns to staff or otherwise informed staff you would be absent. You did not seek Administrative Remedy relief concerning this matter until June 2022, after Ramadan had ended.*** Nevertheless, the institution will be implementing measures to prevent a recurrence of the ban you experienced. You are encouraged to communicate with the Religious Services' staff at your institution with future questions and concerns.

ECF No. 1-4 at 2 (emphasis added). Plaintiff's exhibits document that: (1) he was absent without explanation four times during the 30-day Ramadan prayer period; (2) that he was notified that absences would result in his removal from the Ramadan list; (3) staff discussed Plaintiff's absences with him, but Plaintiff "repeatedly did not show up"; (4) removal from the Ramadan list did not prohibit Plaintiff from prayer or study; and (5) Plaintiff did not tell staff about his health concerns or seek an administrative remedy until Ramadan ended.

Accordingly, it appears to the Court that Plaintiff has failed to submit any evidence which demonstrates a need for a temporary restraining order or preliminary injunction, and has failed to demonstrate that he is likely to suffer irreparable harm in the absence of injunctive relief. Thus, Plaintiff has failed to demonstrate that he meets the second prong of the Winter test.

Because Plaintiff is unable to meet either of the first two prongs of the Winter test, the Court need not consider the third or fourth prongs. Further, because Plaintiff is unable to meet all four parts of the Winter test for issuance of an injunction, his request for an injunction filed as part of his complaint, is without merit. Moreover, to the extent that

Plaintiff's motion seeks to mandate action by the Defendants, Plaintiff has failed to demonstrate that he is entitled to extraordinary relief because he has failed to demonstrate that the exigencies of the situation demand such relief.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Complaint [ECF No. 1] be **DISMISSED WITH PREJUDICE**, based on Plaintiff's failure to state a claim upon which relief can be granted.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and

Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

    DATED:    July 19, 2023

                                        /s/ *Robert W. Trumble*
                                        ROBERT W. TRUMBLE
                                        UNITED STATES MAGISTRATE JUDGE